## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| TODD FENTON, Individually and on Behalf of All Others Similarly Situated, | Case No. _____ |
| Plaintiff, | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | **CLASS ACTION** |
| WELBILT, INC., HUBERTUS M. MUEHLHAEUSER, JOHN O. STEWART and HARESH SHAH, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiff Todd Fenton ("Plaintiff"), by his attorneys, except for his own acts, which are based on knowledge, alleges the following based upon the investigation of counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Welbilt, Inc. ("Welbilt" or the "Company"), as well as regulatory filings and reports, securities analyst reports and advisories by the Company, press releases and other public statements issued by the Company, and media reports about the Company. Plaintiff believes that additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery:

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of all investors who purchased or otherwise acquired Welbilt common stock between February 24, 2017, and November 2, 2018, inclusive (the "Class Period"), seeking remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The federal law claims asserted herein arise under and pursuant to Sections 10(b)

and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.       This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 27 of the Securities Act (15 U.S.C. §78aa.). This Court has jurisdiction over each Defendant named herein because each Defendant is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

4.       Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b) because certain of the acts alleged herein, including the preparation and dissemination of material false and/or misleading information, occurred in this District.

<u>**PARTIES**</u>

5.       Plaintiff Todd Fenton purchased Welbilt common stock within the Class Period and, as a result, was damaged thereby. Plaintiff's certification evidencing his transactions is attached hereto as Exhibit A.

6.       Defendant Welbilt is incorporated in Florida and maintains its principal offices located at 2227 Welbilt Boulevard, New Port Richey, FL 34655. Welbilt's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "WBT."

7.       Defendant Hubertus M. Muehlhaeuser ("Muehlhaeuser") was the Company's Chief Executive Officer ("CEO") and President at all relevant times.

8.       Defendant John O. Stewart ("Stewart") was the Company's Chief Financial Officer ("CFO") and Senior Vice President from the beginning of the Class Period to May 5, 2017.

9.       Defendant Haresh Shah ("Shah") was the Company's CFO and Senior Vice President from May 1, 2017 to the end of the Class Period.

2

10.     Defendants in paragraphs 7-9 are collectively referred to herein as the "Individual Defendants."

11.     Each of the Individual Defendants:

    (a)     directly participated in the management of the Company;

    (b)     was directly involved in the day-to-day operations of the Company at the highest levels;

    (c)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

    (d)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

    (e)     was aware of or deliberately recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

    (f)     approved or ratified these statements in violation of the federal securities laws.

12.     Because of the Individual Defendants' positions within the Company, they had access to undisclosed information about Welbilt's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations and performance), conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.

13.     As officers of a publicly held company whose securities were, and are, registered with the SEC pursuant to the federal securities laws of the United States, the Individual Defendants each had a duty to disseminate prompt, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

14.     The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Welbilt's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. Each Individual Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

15.     Each of the Individual Defendants are liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Welbilt common stock

by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Welbilt's business, operations, management and the intrinsic value of its securities and (ii) caused Plaintiff and other shareholders to purchase Welbilt securities at artificially inflated prices.

**SUBSTANTIVE ALLEGATIONS**

A.     **Company Background**

16.     Welbilt is a commercial foodservice equipment company. Welbilt designs, manufactures and supplies food and beverage equipment for the global commercial foodservice market. Welbilt offers customers unparalleled operator and patron insights, collaborative kitchen solutions, culinary expertise and implementation support and service.

B.     **Material Misstatements and Omissions during the Class Period**

17.     The Class Period begins on February 24, 2017, when after the market close, the Company filed a Form 10-K for the year ended December 31, 2016 ("2016 10-K") with the SEC, which provided the Company's 2016 financial results and positions and stated that the Company's internal control over financial reporting was effective as of December 31, 2016. The 2016 10-K was signed and certified under the Sarbanes-Oxley Act of 2002 by the Individual Defendants attesting to the accuracy of the financial statements, effectiveness of internal controls, and that all fraud was disclosed.

18.     On May 9, 2017, the Company filed a Form 10-Q for the quarter ended March 31, 2017 ("Q1 2017 10-Q") with the SEC, which provided the Company's first quarter 2017 financial results and positions and stated that the Company's internal control over financial reporting was effective as of March 31, 2017. The Q1 2017 10-Q was signed and certified under the Sarbanes-

Oxley Act of 2002 by the Individual Defendants attesting to the accuracy of the financial statements, effectiveness of internal controls, and that all fraud was disclosed.

19.    On August 9, 2017, the Company filed a Form 10-Q for the quarter ended June 30, 2017 ("Q2 2017 10-Q") with the SEC, which provided the Company's second quarter 2017 financial results and positions and stated that the Company's internal control over financial reporting was effective as of June 30, 2017. The Q2 2017 10-Q was signed and certified under the Sarbanes-Oxley Act of 2002 by the Individual Defendants attesting to the accuracy of the financial statements, effectiveness of internal controls, and that all fraud was disclosed.

20.    On November 7, 2017, the Company filed a Form 10-Q for the quarter ended September 30, 2017 ("Q3 2017 10-Q") with the SEC, which provided the Company's third quarter 2017 financial results and positions and stated that the Company's internal control over financial reporting was effective as of September 30, 2017. The Q3 2017 10-Q was signed and certified under the Sarbanes-Oxley Act of 2002 by the Individual Defendants attesting to the accuracy of the financial statements, effectiveness of internal controls, and that all fraud was disclosed.

21.    On March 1, 2018, the Company filed a Form 10-K for the year ended December 31, 2017 ("2017 10-K") with the SEC, which provided the Company's 2017 financial results and positions and stated that the Company's internal control over financial reporting was effective as of December 31, 2017. The 2017 10-K was signed and certified under the Sarbanes-Oxley Act of 2002 by the Individual Defendants attesting to the accuracy of the financial statements, effectiveness of internal controls, and that all fraud was disclosed.

22.    On May 8, 2018, the Company filed a Form 10-Q for the quarter ended March 31, 2018 ("Q1 2018 10-Q") with the SEC, which provided the Company's first quarter 2018 financial results and positions and stated that the Company's internal control over financial reporting was

effective as of March 31, 2018. The Q1 2018 10-Q was signed and certified under the Sarbanes-Oxley Act of 2002 by the Individual Defendants attesting to the accuracy of the financial statements, effectiveness of internal controls, and that all fraud was disclosed.

23.     On August 9, 2018, the Company filed a Form 10-Q for the quarter ended June 30, 2018 ("Q2 2018 10-Q") with the SEC, which provided the Company's second quarter 2018 financial results and positions and stated that the Company's internal control over financial reporting was effective as of June 30, 2018. The Q2 2018 10-Q was signed and certified under the Sarbanes-Oxley Act of 2002 by the Individual Defendants attesting to the accuracy of the financial statements, effectiveness of internal controls, and that all fraud was disclosed.

24.     The statements in paragraphs ¶16-23 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants failed to disclose that: (i) Welbilt lacked effective internal control over financial reporting; (ii) Welbilt was incorrectly recording the tax basis of foreign subsidiaries and the amortization of their intangible assets; and (iii) as a result of the foregoing, Defendants' statements about Welbilt's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

C.     **The Truth Begins to Emerge**

25.     On November 5, 2018, before the market open, Welbilt filed a current report on Form 8-K with the SEC announcing non-reliance on previously issued financial statements (the "November 2018 Form 8-K"). Therein, the Company stated in relevant part:

> **Item 4.02.   Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review.**

***On November 3, 2018, the Audit Committee of the Board of Directors of Welbilt, Inc. (the "Company"), after considering the recommendation of management and after consulting with PricewaterhouseCoopers LLP, the Company's independent registered public accounting firm ("PwC"), determined that the Company's previously issued consolidated financial statements as of and for the year ended December 31, 2016 and the related report of PwC as it relates to such period as included in the Company's Annual Report on Form 10-K for the fiscal year ended December 31, 2017 should no longer be relied upon because of prior period errors. The errors primarily relate to the computation of income taxes associated with intercompany distributions by foreign entities and intercompany obligations in accordance with underlying agreements.***

***During the third quarter of 2018, the Company identified errors in the tax basis of a foreign subsidiary and incorrect amortization of the intangible assets held by the same entity. These errors, which related to a U.S. tax election made in connection with a 2008 acquisition, impacted the tax determinations of certain intercompany distributions between foreign subsidiaries, thereby resulting in an understatement of the U.S. tax liability.***

In addition, the Company discovered certain intercompany transactions were not recorded on a timely basis. While these transactions have no impact to the Company's consolidated pre-tax book income, they did result in an incorrect recognition of income tax expense or benefit recognized in each applicable jurisdiction, thereby resulting in an understatement of the U.S. tax liability.

Based on its preliminary assessment, the Company estimates the aggregate impact of these tax related errors, along with other previously identified errors that were recorded as out of period adjustments, on consolidated net earnings, calculated in accordance with accounting principles generally accepted in the U.S., to be as follows: decrease by approximately $1.0 million to $2.0 million for the year ended December 31, 2015, decrease by approximately $7.0 million to $9.0 million for the year ended December 31, 2016 and decrease by approximately $1.0 million to $2.0 million for the year ended December 31, 2017. Because the Company has not yet fully completed its review, the estimated impact set forth above is preliminary and subject to change.

The Company intends to file an amended Annual Report on Form 10-K for the year ended December 31, 2017 (the "Form 10-K/A") as soon as practicable. The consolidated financial statements of the Company as of and for the year ended December 31, 2016 will be restated, and as of and for the years ended December 31, 2015 and 2017 are expected to be revised, in each case, to reflect the correction of these tax errors. In addition, certain other adjustments, previously determined to be immaterial, individually and in the aggregate, will also be corrected in the restated and revised consolidated financial statements included in the Form 10-K/A. All relevant footnotes to the consolidated financial statements

8

in the Form 10-K/A will also be restated or revised to reflect the items discussed above. In addition, all previously filed 2018, 2017 and 2016 quarterly information are expected to be revised.

The Company has reassessed the effectiveness of the Company's internal control over financial reporting and disclosure controls and procedures in light of the errors described above. The Company has determined that a material weakness relating to income taxes existed as of December 31, 2017 and through September 30, 2018, and therefore the Company's internal controls over financial reporting and disclosure controls and procedures for income taxes were ineffective. In addition, the Company will also restate management's report on internal control over financial reporting and its evaluation of disclosure controls and procedures (included in its Annual Report on Form 10-K for the fiscal year ended December 31, 2017) and will receive an adverse opinion on the internal control over financial reporting as of December 31, 2017 from PwC. Since management has not completed its evaluation of the impact of the errors on its internal control over financial reporting, there can be no assurance that additional control deficiencies which represent material weaknesses will not be identified. Further details and remediation plans will be included in the Form 10-K/A.

The Audit Committee of the Board of Directors has discussed the matters disclosed in this Item 4.02 with PwC.

Emphasis added.

26.     On this news, the price of the Company's common stock declined $5.06 from a close on November 2, 2018, at $19.32 per share of Welbilt common stock, to a close on November 5, 2018 at $14.26 per share of Welbilt common stock, *a drop of approximately 26.19 percent.*

## ADDITIONAL SCIENTER ALLEGATIONS

27.     As alleged herein, Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Welbilt, their control over, and/or receipt and/or modification of

Welbilt's allegedly materially misleading statements and/or their associations with the Company which made them privy to confidential proprietary information concerning Welbilt, participated in the fraudulent scheme alleged herein.

## LOSS CAUSATION AND ECONOMIC LOSS

28.     During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the Company's stock price, and operated as a fraud or deceit on acquirers of the Company's common stock. As detailed above, when the truth about Welbilt's misconduct and its lack of operational and financial controls was revealed, the value of the Company's common stock declined precipitously as the prior artificial inflation no longer propped up its stock price. The decline in Welbilt's common stock price was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of the common stock price decline negates any inference that the loss suffered by Plaintiff and other members of the Class was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the Defendants' fraudulent conduct. The economic loss, i.e., damages, suffered by Plaintiff and other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the Company's stock price and the subsequent significant decline in the value of the Company's share, price when Defendants' prior misrepresentations and other fraudulent conduct was revealed.

29.     At all relevant times, Defendants' materially false and misleading statements or omissions alleged herein directly or proximately caused the damages suffered by the Plaintiff and other Class members. Those statements were materially false and misleading through their failure to disclose a true and accurate picture of Welbilt's business, operations and financial condition, as alleged herein. Throughout the Class Period, Defendants publicly issued materially false and

misleading statements and omitted material facts necessary to make Defendants' statements not false or misleading, causing Welbilt's common stock to be artificially inflated. Plaintiff and other Class members purchased Welbilt's common stock at those artificially inflated prices, causing them to suffer the damages complained of herein.

## PRESUMPTION OF RELIANCE; FRAUD-ON-THE-MARKET

30.    At all relevant times, the market for Welbilt common stock was an efficient market for the following reasons, among others:

(a) Welbilt common stock met the requirements for listing, and were listed and actively traded on the NYSE, a highly efficient market;

(b) During the Class Period, Welbilt common stock were actively traded, demonstrating a strong presumption of an efficient market;

(c) As a regulated issuer, Welbilt filed with the SEC periodic public reports during the Class Period;

(d) Welbilt regularly communicated with public investors via established market communication mechanisms;

(e) Welbilt was followed by securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace; and

(f) Unexpected material news about Welbilt was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

31.    As a result of the foregoing, the market for Welbilt common stock promptly digested current information regarding Welbilt from all publicly available sources and reflected

such information in Welbilt's stock price. Under these circumstances, all purchasers of Welbilt common stock during the Class Period suffered similar injury through their purchase of Welbilt's common stock at artificially inflated prices and a presumption of reliance applies.

32.     Alternatively, reliance need not be proven in this action because the action involves omissions and deficient disclosures. Positive proof of reliance is not a prerequisite to recovery pursuant to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security. Here, the facts withheld are material because an investor would have considered the Company's financials and adequacy of internal controls over financial reporting when deciding whether to purchase and/or sell stock in Welbilt.

## NO SAFE HARBOR; INAPPLICABILITY OF BESPEAKS CAUTION DOCTRINE

33.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the material misrepresentations and omissions alleged in this Complaint.

34.     To the extent certain of the statements alleged to be misleading or inaccurate may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

35.     Defendants are also liable for any false or misleading "forward-looking statements" pleaded because, at the time each "forward-looking statement" was made, the speaker knew the "forward-looking statement" was false or misleading and the "forward-looking statement" was

authorized and/or approved by an executive officer of Welbilt who knew that the "forward-looking statement" was false. Alternatively, none of the historic or present-tense statements made by the defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by the defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

## CLASS ACTION ALLEGATIONS

36.     Plaintiff brings this action on behalf of all individuals and entities who purchased or otherwise acquired Welbilt common stock on the public market during the Class Period, and were damaged, excluding the Company, the defendants and each of their immediate family members, legal representatives, heirs, successors or assigns, and any entity in which any of the defendants have or had a controlling interest (the "Class").

37.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Welbilt securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Welbilt or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions. As of August 3, 2018, Welbilt had more than 140,116,584 shares of common stock outstanding. Upon information and belief, these shares are held by thousands if not millions of individuals located geographically throughout the country and possibly the world.

Joinder would be highly impracticable.

38.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by the defendants' respective wrongful conduct in violation of the federal laws complained of herein.

39.     Plaintiff has and will continue to fairly and adequately protect the interests of the members of the Class and his retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

40.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

        (a)     whether the federal securities laws were violated by the defendants' respective acts as alleged herein;

        (b)     whether the defendants acted knowingly or with deliberate recklessness in issuing false and misleading financial statements;

        (c)     whether the price of Welbilt securities during the Class Period was artificially inflated because of the defendants' conduct complained of herein; and

        (d)     whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

41.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I
### *Violation of Section 10(b) and Rule 10b-5 Against All Defendants*

42.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

43.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase Welbilt common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, each of the Defendants took the actions set forth herein.

44.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Welbilt securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

45.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Welbilt as specified herein.

46.     These Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Welbilt's value and performance

15

and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Welbilt and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Welbilt common stock during the Class Period.

47.     Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each Individual Defendant, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial condition; (3) each Individual Defendant enjoyed significant personal contact and familiarity with the other Individual Defendant and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (4) each Individual Defendant was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

48.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Welbilt's operating condition and future business

16

prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and misstatements of the Company's financial condition throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

49.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Welbilt's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Welbilt's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Welbilt's common stock during the Class Period at artificially high prices and were or will be damaged thereby.

50.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding Welbilt's financial results, which was not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Welbilt securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

17

51.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

52.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

53.     This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of common stock giving rise to the cause of action.

## COUNT II
### *The Individual Defendants Violated Section 20(a) of the Exchange Act*

54.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

55.     The Individual Defendants acted as controlling persons of Welbilt within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, ownership and contractual rights, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. The Individual Defendants provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

56.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

57.     As set forth above, Welbilt, the Individual Defendants each violated Section 10(b), and Rule 10b-5 promulgated thereunder, by their acts and omissions as alleged in this Complaint.

58.     By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

59.     This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of common stock giving rise to the cause of action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment as follows:

       (a)     Determining that this action is a proper class action, certifying Plaintiff as class representative under Federal Rule of Civil Procedure 23 and Plaintiff's counsel as class counsel;

       (b)     Awarding compensatory damages in favor of Plaintiff and the other members of the Class against all Defendants, jointly and severally, for all damages sustained as a result of the defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

       (c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

19

     (d)     Granting extraordinary equitable and/or injunctive relief as permitted by law; and

     (e)     Such other and further relief as the Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff hereby demands a jury trial.

Dated: November 9, 2018          **/ Cullin O'Brien Law, P.A.**

            /s/ Cullin O'Brien
            Cullin O'Brien
            6541 NE 21st Way
            Ft. Lauderdale, Florida 33308
            Tel: (561) 676-6370
            Fax: (561) 320-0285
            Email: cullin@cullinobrienlaw.com

            *Liaison Counsel*

            **LEVI & KORSINSKY, LLP (Trial Counsel)**
            Eduard Korsinsky
            55 Broadway, 10th Floor
            New York, NY 10006
            Tel: (212) 363-7500
            Fax: (212) 363-7171
            Email:ek@zlk.com
            (*Pro hac vice application forthcoming*)

            *Counsel for Plaintiff and Proposed Lead Counsel for the Class*